IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DIGITAL PACKING LICENSING, INC.  §
                                 §
VS.                              §  CIVIL ACTION NO. 4:04-CV-548-Y
                                 §
AT&T, et al.                     §  (Consolidated with 4:05-CV-224-Y)
                                 §

ORDER DENYING PLAINTIFF/
CONSOLIDATED DEFENDANT'S MOTION TO DISMISS

Pending before the Court is plaintiff/consolidated defendant
Digital Packet Licensing, Inc. ("DPL")'s Motion to Dismiss Complaint
for Declaratory Judgment [doc. # 57], filed May 9, 2005.  Having
carefully considered the motion, response, and reply, the Court
concludes that the motion should be DENIED.


I. BACKGROUND

DPL owns U.S. Patent No. 4,782,485 ("the '485 patent"), U.S.
Patent No. 5,018,136 ("the '136 patent"), and U.S. Patent No.
5,444,707 ("the '707 patent").  On July 27, 2004, DPL brought this
suit ("the infringement suit"), asserting patent-infringement claims
regarding the '485 patent against various defendants, only some of
whom remain.

On January 26, 2005, DPL sent a letter ("the 2005 letter") to
consolidated plaintiff Nortel Networks, Inc. ("Nortel") informing
Nortel of its ownership of the '485, '136, and '707 patents and of
its claims in the infringement suit.  The 2005 letter also stated:

> Please understand that [DPL] has no plans to sue your
> company.  In part due to other ongoing litigation, [DPL]
> has not fully investigated your company's products or
> services to determine the extent to which any claims of

1

the '485 Patent may be infringed by your company. However, we do believe that at least your company's Packet Voice Gateway Communication Server 2000, and other VoIP products may infringe one or more of the claims of the '485 Patent, the '136 Patent and the '707 Patent either directly or by contributing to or inducing the direct infringement of others.

At this time, we merely want to make sure that you are aware of the '485, '136 and '707 Patents so you may appropriately consider the potential relevance of the patent claims to your company's products and services. We would be happy to discuss a preferred licensing arrangement under the patents with you or your counsel. Please note, however, that this preferred licensing window may only be open to you for a limited time. If, on the other hand, you believe that your company does not need to be licensed under these patents, it would be most helpful if you would provide us with some insight into your reasoning.

(Nortel's Mot. Dismiss Ex. A. (letter).)

On March 17 Nortel filed suit in the Dallas division of this Court ("the declaratory suit") requesting a declaratory judgment that some or all of the claims of DPL's patents are invalid and/or that Nortel was not infringing DPL's patents. The case was transferred to the Fort Worth division of this Court and later consolidated with the infringement suit. DPL filed a motion to dismiss for lack of subject-matter jurisdiction on May 9.


II. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure Rule 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th

2

Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

On a Rule 12(b)(1) motion, which concerns the court's very power to hear a case, the trial court is free to weigh the evidence and satisfy itself of its authority to preside over the matter. *See MDPhysicians & Assocs., Inc. v. State Board of Ins.*, 957 F.2d 178, 181 (5th Cir.), *cert. denied*, 506 U.S. 861 (1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).  In ruling on a 12(b)(1) motion to dismiss, the court may therefore rely on: 1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

The standard for reviewing a 12(b)(1) motion, however, depends upon whether the defendant makes a facial or factual attack on the plaintiff's complaint. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  A facial attack is made by the mere filing of a Rule 12(b)(1) motion, at which point "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.*  If those jurisdictional allegations sufficiently allege a claim for recovery directly under the Constitution or laws of the United States, the complaint stands and the federal court must entertain the suit. *See id.; Bell v. Hood*, 327 U.S. 678, 681-82 (1946).  Jurisdiction therefore remains undefeated by the possibility that the complaint may fail to state

a claim upon which the plaintiff actually could recover. *See Bell*, 327 at 682.

In contrast, in a factual attack the defendant submits affidavits, testimony, or other evidentiary materials in support of the motion. In such a circumstance, the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523; *see also Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). Where a court reviews extrinsic evidence for a Rule 12(b)(1) motion, no presumption of truthfulness attaches to the plaintiff's allegations. *See Williamson*, 645 F.2d at 412-13. Moreover, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Id.*

Regardless of whether the jurisdictional attack is facial or factual, a motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would establish the Court's jurisdiction. *See Home Builders*, 143 F.3d at 1010 (5th Cir. 1998).

III. <u>ANALYSIS: The Declaratory Judgment Act and Patent Law</u>

The Declaratory Judgment Act ("DJA") provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and

4

> effect of a final judgment or decree and shall be
> reviewable as such.

28 U.S.C.A. § 2201(a) (LexisNexis 2005). Because federal courts do
not render advisory opinions, "the Declaratory Judgment Act requires
the existence of an actual case or controversy between the parties
before a federal court can constitutionally assume jurisdiction."
*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955
(Fed. Cir. 1987) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S.
227, 239-41 (1937)).  Thus, for the Court to have subject-matter
jurisdiction over Nortel's claims there must be an actual case or
controversy between Nortel and DPL.

In patent cases the test for determining whether an actual case
or controversy exists is two-pronged:

> First, the defendant's conduct must have created on the
> part of the plaintiff a reasonable apprehension that the
> defendant will initiate suit if the plaintiff continues
> the allegedly infringing activity.  Second, the plaintiff
> must actually have either produced the device or have
> prepared to produce that device. *Indium* [*Corp. of Am. v.
> Semi-Alloys, Inc.*, 781 F.2d 879], 882-83, 228 U.S.P.Q. at
> 848  [(Fed. Cir. 1985)] (citing *Jervis B. Webb Co. v. S.
> Sys., Inc.*, 742 F.2d 1388, 1398-99, 222 U.S.P.Q. (BNA) 943,
> 949 (Fed. Cir. 1984)).

*Id.*  "The element of threat or reasonable apprehension of suit turns
on the conduct of the patentee, while the infringement element depends
on the conduct of the asserted infringer." *BP Chems. v. Union Carbide
Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993) (citing *Arrowhead Indus.
Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)).
"The test, however stated, is objective and is applied to the facts
existing when the complaint is filed." *Arrowhead*, 846 F.2d at 736
(citation omitted).

A.   Reasonable Apprehension of Suit

A purely subjective apprehension of an infringement suit or a nervous state of mind on the infringer's part are insufficient bases for satisfying the actual-controversy requirement.  *See Indium*, 781 F.2d at 883; *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995) (citation omitted). Objective circumstances at the time the complaint is filed must support an apprehension of future suit.  *See id*.

There is, unfortunately, no bright-line test for determining whether Nortel's actions objectively could give rise to a reasonable apprehension of suit:

> Respecting defendant's conduct, it must be such as to indicate defendant's intent to enforce its patent.  If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more.  In light of the subtleties in lawyer language, however, the courts have not required an express infringement charge.  *Goodyear*, 824 F.2d at 956, 3 USPQ2d at 1312.  When the defendant's conduct, including its statements, falls short of an express charge, one must consider the "totality of the circumstances" in determining whether that conduct meets the first prong of the test.  *Id*. at 955, 3 USPQ2d at 1311.

*Arrowhead*, 846 F.2d at 736.

The 2005 letter did not contain an express charge of infringement; in fact, it specifically stated that there were no plans to sue Nortel. (Nortel's Mot. Dismiss Ex. A. (letter).)  *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888-89 (Fed. Cir. 1992) ("We agree with Amoco that a statement that Shell's activities 'fall within' Amoco's claims in the context of the parties' licensing negotiations can hardly be considered an express charge of infringement.").

Because there is no express charge of infringement, the Court must review the totality of the circumstances at the time of Nortel's commencement of this suit.

The 2005 letter certainly indicated DPL's intent to enforce its patents.  It informed Nortel of DPL's patent ownership, indicated that DPL was currently enforcing the '485 patent in an infringement suit in this Court, stated DPL's belief that Nortel's products may infringe DPL's patents, and offered to Nortel the opportunity to discuss licensing arrangements.

Moreover, the infringement suit touches directly upon Nortel's interests.  Though Nortel is not a defendant in the infringement suit, Nortel's customers are.  "Related litigation may be evidence of a reasonable apprehension." *Shell Oil*, 970 F.2d at 888.  Furthermore, in bolstering its claims in the infringement suit, DPL specifically referred to those customers' uses of Nortel products.  An example is a letter from DPL to infringement-suit defendant Sprint Corporation ("Sprint") which stated:

> Our investigation reveals that Sprint sells many types of phone service that exploit the claimed voice-over-packet system of the '485 patent. . . .
> The attached claim charts are exemplary and represent how calls marketed by Sprint may be serviced in a way that infringes the '485 patent.

(Pls.' App. at 121.)  Attached to the claim chart was a Nortel press release discussing Nortel's "network migration" with Sprint through its "supply[] to Sprint [of] the key elements required for a carrier-grade Voice over IP network." (*Id.* at 192.)  The infringement suit is undoubtedly related to Nortel's claims for declaratory relief.  Nortel's "network migration" with Sprint relates to the very type

of system through which Sprint allegedly infringed DPL's patents--a
voice-over packet system.

Furthermore, though the literature referring to Nortel is only
"exemplary" and represents how Sprint's services "may" infringe the
'485 patent, DPL's reliance on Sprint's use of Nortel's technology,
combined with the 2005 letter, certainly could create an objectively
reasonable apprehension on Nortel's part that it was next to be sued.
An "accusation [of infringement] need not be made directly to the
declaratory judgment plaintiff, but may be made to its customers or
the industry at large." *Nippon Electric Glass Co. v. Sheldon*, 489
F.Supp.119, 121 (S.D.N.Y. 1980); *see also Airship Indus. (UK) Ltd.
v. Goodyear Tire & Rubber Co.*, 643 F.Supp. 754, 759 (S.D.N.Y. 1986)
(same) (quoting *Nippon*).  Such a conclusion would only be strengthened
by DPL's statements in the 2005 letter that it believed Nortel may
be infringing DPL's patents.  It is worth noting that at least one
of the Nortel elements used by Sprint (as stated in the press
release)--the Communication Server 2000--is referenced by DPL in the
2005 letter as possibly infringing DPL's patents.

In addition, the related litigation (the infringement suit) is
not against unrelated third parties.  *See W. Interactive Corp. v.
First Data Res., Inc.*, 972 F.2d 1295, 1298 (Fed. Cir. 1992); *Am.
Dental Techs. v. Kreativ, Inc.*, CIVIL ACTION NO. C-97-374, 1997 U.S.
Dist. LEXIS 21579, at *8 (S.D. Tex. Dec. 5, 1997).  And, DPL's
commencement of the infringement suit establishes DPL's willingness
and capacity to enforce its patent rights.  *See W. Interactive*, 972
F.2d at 1298 (citing *Arrowhead*, 846 F.2d at 737).  Plus, given all

of these facts, Nortel would not have been unreasonable in viewing the 2005 letter as a method for strong-arming Nortel into beginning licensing-agreement negotiations with DPL.

Given all these considerations, the Court cannot conclude that DPL was unreasonable in its apprehension of future suit from DPL. The important question is whether, in light of the totality of the circumstances, Nortel may be said to have reasonably apprehended suit from DPL in the *future*. *See Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 636 (Fed. Cir. 1991) (citation omitted) ("the patent holder's conduct must create an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues"); *Goodyear*, 824 F.2d at 956. DPL's self-serving assurances regarding its present intent aside, and given the timing of the 2005 letter, its content, and DPL's related litigation, there is a *future* threat supporting an objectively reasonable apprehension. *See Teva Pharms. USA, Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1342-43 (Fed. Cir. 2005).

B.   <u>Production or Preparation to Produce the Infringing Item</u>

As stated above, to evaluate whether the second prong of the actual-controversy test is met the Court must examine the conduct of the asserted infringer--Nortel. *See BP Chems.*, 4 F.3d at 978 (citing *Arrowhead*, 846 F.2d at 736). A declaratory-judgment plaintiff must have a true interest to be protected by a declaratory judgment. *See Arrowhead*, 846 F.2d at 736 (citing *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 879, 219 USPQ 197, 202 (Fed. Cir. 1983); *Windsurfing*

*Int'l v. AMF Inc.*, 828 F.2d 755, 758, 4 USPQ2d 1052, 1055 (Fed. Cir. 1987)).  An actual controversy is not present where a plaintiff hopes to "obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity."  *Id.* (citing *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90, 137 USPQ 235, 236 (2d Cir. 1963); *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949).  A "[p]laintiff must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity."  *Id.* (citing *Indium*, 781 F.2d at 883, 228 USPQ at 848; *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949.)

DPL argues that the second prong is unmet because DPL "has not asserted any charge of infringement against Nortel."  (DPL's Mot. at 6.)  As discussed above, however, DPL's infringement allegations directly touch upon Nortel's products.  Moreover, the 2005 letter indicates that Nortel's infringement is likely; it also implies that a licensing agreement is necessary in order to protect Nortel's products from the legal penalties of infringement.  That, combined with DPL's reliance upon information concerning Nortel's products and/or services in order to bolster its infringement claims against related third parties (the infringement defendants), demonstrates the weakness of DPL's argument.

The Court deems these facts sufficient to pass the second prong of the actual-case-or-controversy test.  Nortel is not seeking an advisory opinion on whether it can begin a certain type of conduct;

10

rather, it moves for a declaration that its present activity does not infringe DPL's patents.  That type of claim meets the second prong's requirements.[1]  *See id.* at 738 n.10 ("All that the second prong of the test requires is a showing that plaintiff's conduct evidences a real interest in an activity that may, potentially, be enjoined.")  Consequently, the Court concludes that this suit does involve an actual case or controversy, and thus that the Court has subject-matter jurisdiction over the action.[2]


## IV.  <u>CONCLUSION</u>

Therefore, DPL's Motion to Dismiss Complaint for Declaratory Judgment [doc. # 57] is DENIED.

SIGNED February 27, 2006.


TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that Nortel does not have to establish that it is actually infringing DPL's patents in order to demonstrate an actual case or controversy: "[i]t is at best incongruous to require that one seeking a declaration of noninfringement prove its process or product is the 'same as' or 'identical' to the patented process or product."  *Arrowhead*, 846 F.2d at 738.

[2] The Court declines to exercise its discretion to decline jurisdiction for the reasons stated in Nortel's response.

11