```
                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

VONAGE HOLDINGS CORPORATION,       §
                                   §
          Plaintiff,               §
vs.                                §
                                   §
SBC INTERNET SERVICES, INC.,       §
ET AL.,                            §
                                   §
          Defendants,              §   CIVIL ACTION NO. 4:04-CV-548-Y
and                                §   Consolidated with 4:05-CV-224-Y
                                   §
NORTEL NETWORKS, INC.,             §        **JURY TRIAL DEMANDED**
                                   §
          Plaintiff,               §              **("ECF")**
                                   §
v.                                 §
                                   §
VONAGE HOLDINGS CORPORATION        §
                                   §
          Defendant.               §
```

                     ORDER PARTIALLY GRANTING
                  AND PARTIALLY DENYING MOTION FOR
              LEAVE TO FILE AN AMENDED RESPONSE TO VONAGE'S
          <u>COUNTERCLAIMS AND MOOTING MOTION FOR LEAVE TO FILE SUR-REPLY</u>

  Declaratory-judgment plaintiff Nortel Networks, Incorporated ("Nortel"), has filed a motion (doc. #264) requesting leave from the Court to file an amended response to Vonage Holdings Corporation's ("Vonage") counterclaim. In its proposed amended response, Nortel seeks to add a counterclaim for a declaration of noninfringement and invalidity of Vonage's U.S. patent no. 5,444,707 ("the '707 patent"). Nortel also seeks to add a counter-counterclaim alleging Vonage's infringement of Nortel's

U.S. patents Nos. 6,091,808, 6,445,695, and 7,050,861 ("the Nortel asserted patents"). Vonage does not oppose the addition of the counterclaim regarding the '707 patent. It does oppose the addition of the counter-counterclaim of the Nortel-asserted patents.

After review of Nortel's motion and reply and Vonage's response, the Court concludes that Nortel's motion should be PARTIALLY GRANTED AND PARTIALLY DENIED.[1]

I.  Factual Background

In July 2004, Digital Packet Licensing, Incorporated ("DPL"), initiated a suit against AT&T Corporation; SBC Communications, Incorporated; Sprint Corporation; and Verizon Communications, Incorporated; alleging infringement of its U.S. patent No. 4,782,485 ("the '485 patent"). In March 2005, Nortel, the manufacturer of the equipment that allegedly infringes on the '485 patent, filed a declaratory-judgment action against DPL asserting that DPL's '485 patent and its U.S. patent no. 5,018,136 ("the '136 patent") are invalid or that Nortel is not infringing on these patents. The '136 patent is a continuation of the '485 patent. The Court consolidated these two actions in April 2005.

---

[1] In reaching this decision, the Court did not consider Vonage's motion to file a sur-reply or its sur-reply. Accordingly, Vonage's motion (doc. #275) for leave to file a sur-reply is RENDERED MOOT.

DPL subsequently assigned all of its rights in the '485 and '136 patents to Vonage, and Vonage replaced DPL as the plaintiff and declaratory defendant in November 2006. Vonage answered Nortel's complaint in March 2007 and asserted counterclaims of infringement of its '485, '136, and '707 patents. All three of Vonage's patents relate to a technology called Voice over Internet Protocol ("VoIP") and specifically address the technology of voice compression used in VoIP. Nortel filed its response to Vonage's counterclaims in April 2007.

In July 2005, the Court entered its initial scheduling order whereby each party plaintiff had until April 28, 2006, to request leave to amend any pleadings and each party defendant had until May 26 to request leave to amend. Since that time, the Court has issued numerous amended scheduling orders and has granted numerous motions to extend certain deadlines, but at no time was the leave-to-amend deadline extended.[2] Indeed, Although Nortel claims that it has timely filed its motion to amend its response, it fails to refer to any scheduling order or any deadline established by the Court showing that its request for leave is in fact timely.

---

[2] For example, the Court's first amended scheduling order extended to August 14, 2006, the deadline for DPL to file an amended complaint, but it did not extend the deadline for any other party to amend its pleadings. The Court's last order amended certain deadlines but did not address the deadline for requesting leave to amend pleadings.

II. Analysis

Once a responsive pleading has been filed, a party may seek leave from the district court to amend its pleadings. *See* Fed.R.Civ.P. 15(a). And Rule 15(a) directs that leave "shall be freely given when justice so requires." Thus, Rule 15(a) has a bias in favor of granting leave to amend pleadings. *See Martin's Herend Imports, Inc., v. Diamond & Gem Trading,* 195 F.3d 765, 770 (5th Cir. 1999). Unless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the district court must grant leave to amend. *See Id.*

A different standard, however, applies when a party seeks leave to amend after the deadline imposed by a district court's scheduling order has expired. *S & W Enterprises, L.L.C., v. Southtrust Bank,* 315 F.3d 533, 536 (5th Cir. 2003). In that circumstance, Rule 16(b) applies, which states that a district court's scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." A district judge has "broad discretion" in deciding whether there is good cause to modify its scheduling order and may deny a request to modify "to preserve the integrity and purpose" of its order. *Id.* at 535. When reviewing a motion requesting leave to file an amended pleading after the Court's deadline has expired,

4

the Court must weigh four factors: 1) the movant's explanation for the failure to timely move for leave to amend; 2) the importance of the amendment; 3) the potential prejudice to the opposing party; and, 4) the availability of a continuance to cure such prejudice. *Id.* at 536.

As noted above, Vonage doesn't oppose Nortel's request for leave to amend its response to add a counterclaim seeking a declaration of invalidity or noninfringement of Vonage's '707 patent. Although Vonage correctly points out that Nortel fails to explain why it did not assert this counterclaim in its original April 2007 response, Vonage concedes that this patent is already a part of this litigation and it will not suffer any prejudice from the amendment. According to Vonage, "The '707 patent, as with the other Vonage patents being asserted, relates to voice-compression technology, and in fact identifies the parent '485 patent as prior art." (Vonage's Resp. at 4 n.2.) It contends that Nortel's counterclaim regarding the '707 patent "adds no new issues, and has no bearing whatsoever on the scheduling order." (*Id.*) Therefore, the Court GRANTS Nortel leave to file an amended response that adds a counterclaim for invalidity or noninfringement of Vonage's '707 patent.

Vonage opposes Nortel's request to add counter-counterclaims of infringement of the Nortel-asserted patents. Vonage argues

5

that the Nortel-asserted patents "have nothing to do with the technology being asserted by Vonage, and in fact have no relation to each other." (*Id.* at 4.) Vonage contends that the Nortel-asserted patents are completely unrelated because they do not address voice-compression technology. According to Vonage, the Nortel-asserted patents cover (1) a system for managing telephone calls using a remotely accessible computer network facility using a web browser; (2) a technology to control a called party's telephone from the originating telephone terminal through computer code sent in messages between the two terminals; and, (3) a system where a proxy terminal operates to perform several functions for another terminal. Vonage argues that only it and Nortel have an interest in the issues surrounding the Nortel-asserted patents, none of the other parties would be concerned, and that adding these patents to the litigation "would more than double the size of this litigation" and "undoubtedly would delay" this case. (*Id.* at 6.)

Nortel does not seem to dispute that its asserted patents are unrelated to voice-compression technology used in VoIP technology. Instead, it argues that its asserted patents relate to "the same general area of technology," VoIP. (Nortel's Reply at 4.) Nortel also points out that Vonage has brought a declaratory-judgment action against it in a Delaware court re-

garding the Nortel-asserted patents. "Thus, at this point," Nortel argues, "there is no question that [its asserted patents] will be litigated." (*Id.* at 1.)

The Court concludes that Nortel has not timely made its request to amend its response to Vonage's counterclaims. Although it filed its original response after the deadline to amend pleadings had passed, it never sought an extension of that deadline in any of the parties' requests to alter or amend the scheduling order. Nortel also fails to explain why it did not or could not assert these counter-counterclaims when it filed its original response to Vonage's counterclaims.

Nevertheless, applying either the Rule 15(a) or 16(b) standard, the Court concludes that Nortel should not be permitted to amend its response to add claims involving the Nortel-asserted patents. These patents, although related to the broad technology of VoIP, are completely unrelated to the voice-compression technology that is at issue in this litigation. Adding new technological issues to the case, even though they relate to the broader technology that encompasses the issues present in this case, will undoubtedly further delay the resolution of this case, require additional discovery, and further complicate an already complex case. Because the technology behind the Nortel-asserted patents is completely different from and unrelated to voice-com-

pression technology, the discovery in this case would not overlap. The parties would need to locate new experts, and additional time would be needed for drafting proposed claim-construction statements and responses to those statements. This will lead to a delay in the parties' preparing a joint claim-construction statement and the filing of any motion under *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996). And despite the increased litigation and the delay, only two of the parties in this case have an interest in the Nortel-asserted patents, Nortel and Vonage.

This litigation has been pending for more than three years and for that entire time the parties have been preparing for a case concerning voice-compression technology used in VoIP. Moreover, because Vonage has already initiated an action in Delaware that addresses the Nortel-asserted patents, the Court is not persuaded that Nortel will suffer any prejudice simply because it would have two lawsuits regarding the validity and infringement of different patents that have nothing in common other than that they relate to the same general technological field.

III. Conclusion

For the following reasons, the Court concludes that a substantial basis exists to deny Nortel leave to amend its response

to add claims regarding the Nortel-asserted patents. Further, the Court concludes that Nortel has failed to establish: (1) why it failed to assert these patents in its original response; (2) that their addition is important to this litigation; (3) that their addition would not prejudice Vonage or the other parties, cause undue delay of this litigation, and unreasonably increase its complexity; and, (4) that a continuance would alleviate the prejudice. Accordingly, Nortel's motion for leave to amend is PARTIALLY GRANTED in that it may file an amended response addressing only Vonage's '707 patent. In all other respects, the motion is DENIED.

SIGNED October 30, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE